# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MOHAMMED THABATA, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )    No. CIV-26-531-J |
| | ) |
| TODD BLANCHE,[1] et al., | ) |
| | ) |
| Respondents. | ) |

## <u>REPORT AND RECOMMENDATION</u>

Petitioner Mohammed Thabata, a noncitizen[2], seeks a writ of habeas

corpus under 28 U.S.C. § 2241. Doc. 1.[3] United States District Judge Bernard

M. Jones, II referred the case to the undersigned Magistrate Judge under 28

U.S.C. § 636(b)(1)(B), (C). Doc. 3. The Government responded to the petition,

Doc. 11, and Petitioner replied, Doc. 12. So the matter is at issue.

---

[1]    Todd Blanche is the acting Attorney General. The Court substitutes him as a party for former Attorney General Pam Bondi. *See* Fed. R. Civ. P. 25(d). The Court also substitutes Department of Homeland Security (DHS) Secretary Markwayne Mullin for former Secretary Noem as a party.

[2]    This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

[3]    Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

For the reasons set forth below, the undersigned recommends the Court grant Petitioner's request for immediate release subject to an appropriate Order of Supervision (OOS).

## I.    Factual background and procedural history.

Petitioner, "an individual born in Jordan but currently a stateless Palestinian," entered the United States as a legal permanent resident on or about December 22, 2009. Doc. 11, Att. 1, at 1-2; Doc. 1, at 2. After pleading guilty to online solicitation of a minor in Texas state court, Immigration and Customs Enforcement (ICE) took Petitioner into custody on September 16, 2021. Doc. 11, Att. 1, at 2. The Department of Homeland Security (DHS) issued Petitioner a Notice to Appear (NTA) that charged him as removable under the Immigration and Nationality Act (INA) § 237(a)(2)(E)(i).[4] *Id*. & Att. 2. On December 22, 2021, an Immigration Judge (IJ) ordered Petitioner to be removed to Palestine, or in the alternative, Jordan. *Id*. Att. 3. Petitioner waived his right to appeal, so the order became final. *Id*.; Doc. 1, at 2.

On or about January 11, 2022, ICE Enforcement Removal Operations (ERO) determined there was no significant likelihood of removing Petitioner

---

[4]    Codified at 8 U.S.C. § 1227(a)(2)(E)(i).

in the reasonably foreseeable future. Doc. 11, Att. 1, at 2. ICE ERO released Petitioner on an OOS on January 13, 2022. *Id*. Att. 4.

ICE issued a "warrant of removal/deportation" and took Petitioner into custody on or about September 11, 2025, following his arrest and detention in Dallas County, Texas for a probation violation. *Id*. Att. 1, at 2 & Att. 5. "On or about November 13, 2025, [Petitioner] submitted a request to the General Delegation of the [Palestine Liberation Organization (PLO)] to the United States to obtain a Palestinian passport." *Id*. Att. 1, at 2.

On November 24, 2025, Petitioner received "a Notice to Alien of File Custody Review with a post-order custody review . . . scheduled for December 10, 2025." *Id*. at 3. On December 4, 2025, ICE ERO submitted a transit request for Petitioner to the Government of Israel, for which approval takes approximately three to six months or longer. *Id*. On December 12, 2025, ICE ERO determined there was a significant likelihood of removing Petitioner in the reasonably foreseeable future. *Id*. And at his March 11, 2026, 180-day post-order custody review, ICE ERO again determined there was a significant likelihood of his removal in the reasonably foreseeable future. *Id*.

Deportation Officer Romeo Foncha states in his declaration to the Court that "ERO is actively working on obtaining [Government of Israel] transit and aiding [Petitioner] with getting a Palestinian passport." *Id*. He believes

3

"removal of [Petitioner] is significantly likely in the reasonably foreseeable future." *Id.*

## II.    Petitioner's claims.

Petitioner asserts four grounds for relief:

(1)    He seeks declaratory relief that he is detained under 8 U.S.C. § 1231(a)(1) and that there is no significant likelihood of his removal in the reasonably foreseeable future;

(2)    He asserts Respondents violated federal law and regulations governing "the detention, release, and redetention of aliens with final orders of removal";

(3)    He asserts Respondents violated his Fifth Amendment Due Process rights in re-detaining him; and

(4)    He asserts Respondents' actions violate the Administrative Procedure Act.

*Id.* at 21-24.

Regarding statutory and regulatory violations, he argues that neither the Headquarters Post-Order Detention Unit, nor the Executive Associate Commissioner nor the District Director has reviewed or authorized his re-detention. *Id.* at 4. He also argues that Respondents violated 8 C.F.R. § 241.13 because no changed circumstances support his re-detention, they failed to give him notice or a written decision explaining the reasons for his re-detention, and they never granted him a post-detention interview. *Id.* at 4-5.

He seeks his immediate release subject to his previous OOS because there is no significant likelihood of his removal in the reasonably foreseeable future and because Respondents failed to comply with § 241.13(i)(2)-(3). *Id.* at 25. He also seeks a show cause order requiring Respondents to file a speedy response, an order restricting Respondents from moving Petitioner from the State of Oklahoma during the pendency of this action, an order requiring 72-hours' notice of any transfer,[5] and an order assuring Respondents grant him due process and adhere to their own regulations in any future proceedings. *Id.* at 24-25. He also seeks a return of property ICE agents took from him during his arrest[6] and an award of attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412.[7] *Id.* at 25.

---

[5]    The Court addressed these issues in its Order for a Response. *See* Doc. 9.

[6]    This request for relief is not cognizable in a habeas corpus proceeding. *See, e.g.*, *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997) (explaining that the "fundamental purpose of a § 2241 habeas proceeding" is to attack "the legality of [] custody," and "the traditional function of the writ is to secure release from illegal custody" (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973))).

[7]    To the extent that Petitioner may be entitled to EAJA fees and costs as a prevailing party, Petitioner must seek those separately after a final judgment. 28 U.S.C. § 2412(d)(1)(B); *see also Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025) (interpreting "EAJA's broad language to unambiguously authorize fees in habeas actions challenging immigration detention").

### III.    Standard of review.

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser*, 411 U.S. at 484. Habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort,* 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis,* 533 U.S. 678, 687 (2001)); *see also Zadvydas*, 533 U.S. at 687 ("[T]he primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear these cases.").

### IV.    Analysis.

#### A.    The Court has jurisdiction to hear Petitioner's claims in Grounds One, Two, and Three.

Respondents argue that this Court lacks jurisdiction to review Petitioner's re-detention claims because "8 U.S.C. § 1252(g) strips district courts of jurisdiction over 'any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." Doc. 11, at 23. Relying on *Tazu v. Att'y Gen. of United States,* 975 F.3d 292 (3d Cir. 2020),

6

Respondents assert that re-detention is "'simply the enforcement mechanism' the Attorney General picked to execute [a] removal order'" and so it is insulated from review by this Court. *Id.* at 24 (quoting *Tazu,* 975 F.3d at 298-99).

This Court has previously rejected Respondents' jurisdictional arguments, and it should do the same here. *Bui v. Bondi*, No. CIV-26-91-J, 2026 WL 788947, at *1 (W.D. Okla. Mar. 20, 2026); *see, e.g., Nguyen v. Bondi,* No. CIV-25-1402-D, 2026 WL 396548, at *4 (W.D. Okla. Feb. 12, 2026) ("The Court agrees with the magistrate judge's finding that neither 8 U.S.C. § 1252(b)(9) nor § 1252(g) deprives the Court of jurisdiction . . . .").

## B. Respondents improperly revoked Petitioner's OOS when they failed to give him notice or an interview upon revocation.

In Grounds One and Two, Petitioner alleges Respondents have not provided him with the reasons for his re-detention following his release on supervision, an interview at which he can present evidence demonstrating there is no significant likelihood of his removal in the reasonably foreseeable future, or a "written decision explaining what changed circumstances allegedly justified or currently justify his redetention." Doc. 1, at 3. And so he argues that Respondents have violated their own regulations in re-detaining him. *Id.* at 4-5. Because Petitioner's claims in Grounds One and Two are intertwined,

the undersigned addresses them together and finds Respondents violated their regulations in revoking Petitioner's OOS and re-detaining him.

Respondents state they revoked Petitioner's OOS because he "violated a condition of his release." Doc. 11, at 16, 26 & Att. 1, at 2; *see id.* at 23 (Petitioner has been detained because he has a final order of removal and he violated the conditions of his release."). Based on this violation, Respondents argue their revocation of Petitioner's OOS was "lawful" under 8 C.F.R. § 241.13(i)(1)." *Id.* at 26.[8] They further argue that, because that section does not require notice, their failure to give him such notice or grant him an interview means they did not violate their own regulations. *Id.* Alternatively, they state they provided notice through a warrant on the day ICE took Petitioner into custody and through post-custody evaluations. *Id.* at 10, 26 & Atts. 1, 5.

"The Government's ability to detain, release, and revoke the release of noncitizens subject to removal orders is governed by specific regulations." *Tran v. Blanche*, No. CIV-25-1357-G, 2026 WL 1181700, at *1 (W.D. Okla. Apr. 30,

---

[8]      Elsewhere in their response, Respondents describe the regulatory framework of 8 C.F.R. § 241.4(l)(1)-(2). Doc. 11, at 14-15. They state that provision allows for revocation if the "[noncitizen] violates any condition of release," or if an appropriate official determines that "[t]he purposes of release have been served," or it is "appropriate to enforce a removal order or to commence removal proceedings." 8 C.F.R. § 241.1(l)(1)-(2)(i-iv). It is unclear why Respondents reference this section when they later admit they revoked Petitioner's OOS under § 241.13(i)(1). *See* Doc. 11, at 26.

2026) (quoting *Phongsavanh v. Williams*, 809 F. Supp. 3d 864, 867 (S.D. Iowa 2025)). Under § 241.13(i), "federal authorities may revoke an order of supervised release and 'return the alien to custody' 'if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future.'" *Tran*, 2026 WL 1181700, at \*2 (quoting 8 C.F.R. § 241.13(i)(2)). "Alternatively, an order of supervision may be revoked if the noncitizen "violates any of the conditions of release." *Id.* (quoting § 241.13(i)(1). "Revocation *for either* reason triggers a notification requirement and a review process." *Id.* (emphasis added).

> Revocation procedures. Upon revocation, the alien will be notified of the reasons for revocation of his or her release. [ICE] will conduct an initial informal interview promptly after his or her return to [ICE] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, **or that he or she has not violated the order of supervision**. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(3) (emphasis added). As is apparent from the regulation's language, Respondents' revocation of Petitioner's OOS for violating a condition of release did, in fact, trigger the review process in subsection three. *Tran*, 2026

9

WL 1181700, at *2. So, contrary to Respondents' assertions, they were required to provide both notice and an interview to Petitioner upon revoking his OOS.

In his declaration to this Court, Detention Officer Foncha does not state Petitioner received notice or an interview when taken into custody. Doc. 11, at 26 & Att. 1. He states Petitioner was taken into custody for violating his probation and, while in custody, they provided him with a copy of his warrant for removal. *Id.* (citing Att. 5). But the warrant specified no reasons for the revocation. So it did not provide Petitioner adequate notice. *See, e.g.*, *Bui*, 2026 WL 788947, at *3 (Section 241.13(i)(3) "requires not just notice, but notice that specifies 'the reason for revocation of his or her release.'").

Respondents also argue that Petitioner has received "two custody evaluations and determinations" since they re-detained him. Doc. 11, at 26. But these "substituted notice[s]" are "not sufficient under § 241.13(i)(3)." *Bui*, 2026 WL 788947, at *3.

When Respondents re-detained Petitioner on September 11, 2025, they failed to give him proper notice, or a prompt informal interview as required by 8 C.F.R. § 241.13(i). "[S]uch regulatory defects amount to due process violations that entitle a petitioner to habeas relief.'" *Tran*, 2026 WL 1181700, at *3 (internal quotation marks omitted) (distinguishing *Bahadorani v. Bondi*, No. CIV-25-1091-PRW, 2025 WL 3048932, at *3 (W.D. Okla. Oct. 31, 2025)).

10

### C.    Petitioner sufficiently establishes a violation of his Due Process rights under the Fifth Amendment and *Zadvydas* in Ground Three.

Even if the Court were to find Respondents gave Petitioner adequate notice under § 241.13, the undersigned finds Respondents have not met their burden that Petitioner's removal is significantly likely in the reasonably foreseeable future.

Detention of a noncitizen subject to a final order of removal may not be indefinite and is presumptively reasonable for only six months beyond the ninety-day removal period. *Zadvydas*, 533 U.S. at 701. After that, the detainee may bring a habeas action to challenge his detention. *Id.* at 684-85, 688. To obtain habeas relief, the petitioner "must show 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Bui*, 2026 WL 788947, at *5 (quoting *Zadvydas*, 533 U.S. at 701). "The government must 'then respond with evidence sufficient to rebut that showing' or release the individual." *Id.*

Petitioner has met his burden in this case. Respondents re-detained Petitioner more than six months ago. Doc. 11, Att. 5. They had previously released him under an OOS in 2022 after they could not timely "effectuate" his removal to Palestine or Jordan. *See* Doc. 11, Att. 1, at 2 ("On or about January 11, 2022, ERO determined there was no significant likelihood of removing

11

[Petitioner] in the reasonably foreseeable future . . . for Palestinians going to the West Bank/Gaza."). Petitioner lacks a passport to enter Palestine even though he has applied for one, and Respondents have obtained no travel documents on his behalf.[9] These administrative impediments were extant as recently as March 2026. *Id*.

In an attempt to rebut Petitioner's showing, Officer Foncha states that "ERO is actively working on obtaining [Government of Israel] transit and aiding [Petitioner] with getting a Palestinian passport." *Id*. He admits that "approvals from the [Government of Israel] generally take 3-6 months or longer" but he believes that Petitioner's removal "is significantly likely in the reasonably foreseeable future." *Id*.

Courts have often rejected conclusory statements, such as those from Officer Foncha. *Hamidi v. Bondi*, No. CIV-25-1205-G, 2025 WL 4034263, at \*5 (W.D. Okla. Nov. 14, 2025), ("Respondents provide no information about whether the Canadian Embassy has responded to ICE's inquiry about Petitioner specifically or even more generally about whether it can or has been

---

9    Respondents challenge Petitioner's notion that he needs a travel document at all. Doc. 11, at 20 ("While some countries certainly utilize them, not all do."). But Respondents offer no support for this argument. *See Khatib v. Marin*, 2026 WL 789947, at \*1 (C.D. Cal. Mar. 13, 2026) ("DHS has requested travel documents for Petitioner from Jordan and, alternatively, seeks to remove him to Palestine.").

able to issue travel documents for those similarly situated to Petitioner."), *adopted*, 2025 WL 3452454 (W.D. Okla. Dec. 1, 2025). To sustain its burden the Government must offer more than "generalized evidence." *Bui*, 2026 WL 788947, at * 5. It must actually make legitimate progress towards removal. *See Hassoun v. Sessions*, 2019 WL 78984, at *5 (W.D.N.Y. Jan. 2, 2019) (stating that "[T]the reasonableness of Petitioner's detention turns on whether and to what extent the government's efforts are likely to bear fruit. Diligent efforts alone will not support continued detention.").

As Petitioner points out, Israel is "actively involved in a war against, at minimum, Iran and Lebanon in recent weeks, and is consequently less likely than ever before to get around to facilitating [transit] requests for stateless Palestinians in the reasonably foreseeable future." Doc. 12, at 2-3. Additionally, there is little chance "any third country would accept Petitioner for deportation considering his 2021 conviction for a criminal sexual conduct offense." *Id*. at 3. Respondents do not "meaningfully address these barriers or offer an assurance that they are no longer problematic." *Bui*, 2026 WL 788947, at *5.

Respondents have not met their burden of demonstrating Petitioner's removal is significantly likely in the reasonably foreseeable future. So his continued detention is unconstitutional. *Zadvydas*, 533 U.S. at 701.

13

Accordingly, the undersigned recommends the Court grant Petitioner's habeas petition and order his immediate release subject to an appropriate OOS. *See Bui*, 2026 WL 788947, at *6 (ordering the petitioner's immediate release "subject to an appropriate Order of Supervision").

### D.    Petitioner's APA claim does not lie within habeas.

Petitioner asserts Respondents also violated the APA when they re-detained him. Doc. 1, at 23. But because Petitioner's claims for relief "'necessarily imply the invalidity' of [his] confinement," his claims "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025); *see also id.* at 674 ("[G]iven 5 U.S.C. § 704, which states that claims under the APA are not available when there is another 'adequate remedy in a court,' I agree with the Court that habeas corpus, not the APA, is the proper vehicle here.") (Kavanaugh, J. concurring); *Soberanes,* 388 F.3d at 1310 ("Challenges to immigration detention are properly brought directly through habeas." (citing *Zadvydas,* 533 U.S. at 687)). The Court should deny Petitioner's requests for relief under the APA.

### V.    Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court grant Petitioner's petition for writ of habeas corpus, Doc. 1, and order his immediate release from custody within three business days, subject to an

14

appropriate OOS. **The undersigned further recommends that the Court order Respondent certify compliance by filing a status report within ten business days of the Court's order.**

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of this Court by May 22, 2026, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.[10] The undersigned further advises the parties that failure to make timely objections to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

---

[10]    Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation to three days. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process.").

**ENTERED** this 19th day of May, 2026.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE